UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LUIS MANUEL ARGUELLO,

      Plaintiff,

v.                           Case No.:  5:20-cv-582-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Luis Manuel Arguello seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.    Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

**B.     Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v.*

*Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.    Procedural History

Plaintiff filed an application for supplemental security income benefits on November 2, 2018, alleging disability beginning October 20, 2018. (Tr. 86, 189-93). The application was denied initially and on reconsideration. (Tr. 86, 101). Plaintiff

requested a hearing and on February 7, 2020, a hearing was held before Administrative Law Judge Angela L. Neel ("ALJ"). (Tr. 39-72). On April 16, 2020, the ALJ entered a decision finding Plaintiff not under a disability from November 2, 2018, the date the application was filed. (Tr. 17-32).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on September 30, 2020. (Tr. 2-7). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on December 3, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 24).

### D.   Summary of ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 2, 2018, the application date. (Tr. 19). At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine with fracture and lesion; and degenerative disc disease of the thoracic and lumbar spines." (Tr. 20). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 22).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 416.967(b) except the claimant is limited to no operation of foot controls with the right lower extremity. The claimant should never climb ladders, ropes, and scaffolds, but he can occasionally climb ramps and stairs. There should also be only occasional balancing, stooping, kneeling, crouching, and crawling. The claimant should have no more than occasional overhead work activity. There should be no work at unprotected heights and [ ] the claimant should not operate a motor vehicle. The claimant can frequently handle and feel with the right hand.

(Tr. 22).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (Tr. 30). At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age (40 on the application date), education (at least high school), work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 31-32). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1)  gate guard, DOT 372.667-030,[1] light, semi-skilled, SVP 3

(2)  counter clerk, DOT 249.366-010, light, unskilled, SVP 2

(3)  host/hostess, DOT 349.667-014, light, unskilled, SVP 2

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

(Tr. 31-32). The ALJ concluded that Plaintiff had not been under a disability since November 2, 2018, the date the application was filed. (Tr. 32).

## II.     Analysis

On appeal, Plaintiff raises two issues: (1) whether the ALJ properly evaluated the opinion evidence; and (2) whether the ALJ's findings that Plaintiff's allegations of pain were not entirely consistent with the medical evidence was supported by substantial evidence. (Doc. 20, p. 14, 22).

### A.     Consideration of the Medical Opinion Evidence

Plaintiff argues that the ALJ did not properly consider the opinions of Justin Tokorcheck, M.D., and physical therapists Janice Barnette, PTA and Brenda Koronka, PT. (Doc. 20, p. 14-21). The Commissioner contends that the ALJ properly considered and evaluated the medical source opinions. (Doc. 23, p. 6).

#### 1.     Regulations for Evaluating Opinion Evidence

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or give any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a).[2] Thus, an

---

[2] Plaintiff cites the new regulations and argues substantial evidence does not support the ALJ's persuasiveness findings. (Doc. 20, p. 19, 21-22). Plaintiff also argues that even though the new regulations apply, the Eleventh Circuit has not revoked the "treating physician's rule" and as such Dr. Tokorcheck's opinions should have been given controlling or at least great weight. (Doc. 20, p. 19). In a recent opinion, however, the Eleventh Circuit found:

As an initial matter, Walker filed for DIB in 2018, so the new regulations apply to his claim. *See id.* [20 C.F.R.] § 404.1520c. For this reason, Walker's reliance on an

ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at \*2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 404.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. 416.920c(b)(2).

---

unpublished case from 2015, which applied the prior version of the regulations, is inapplicable because the ALJ was not required under the new regulations to provide more weight to Dr. Fava's opinion absent good cause, or state with clarity his reasons for not doing so.

*Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at \*2 (11th Cir. Apr. 5, 2022). Thus, the ALJ did not err in following the requirements of the new regulations.

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. § 404.1513(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. § 404.1513(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. 404.1513(a)(3).

### 2.    Dr. Tokorcheck

Plaintiff argues that substantial evidence does not support the ALJ's decision to find Justin Tokorcheck, M.D.'s opinion unpersuasive. (Doc. 20, p. 15-17). Plaintiff claims that the ALJ adopted some of Dr. Tokorcheck's findings, such as limited and painful range of motion in the neck, antalgic gait, spasms in the paraspinal area, and positive straight leg raises on the right, but still found his opinion unpersuasive overall. (Doc. 20, p. 15).

Dr. Tokorcheck treated Plaintiff for pain on June 18, 2019, after his second automobile accident, with follow-up visits on August 5, 2019, and October 30, 2019. (Tr. 539-40). After the August visit, Dr. Tokorcheck completed a Medical Source Statement on August 21, 2019. (Tr. 522-28).

In the decision, the ALJ thoroughly considered Dr. Tokorcheck's treatment records and his Medical Source Statement. (Tr. 20, 21, 25, 27, 28, 29). The ALJ noted that Plaintiff received treatment from Dr. Tokorcheck after his June 1, 2019 car accident. (Tr. 20). He diagnosed Plaintiff with motor vehicle accident, cervicalgia, and lumbago with sciatica on the right side. (Tr. 20, 25). The ALJ noted that Dr. Tokorcheck repeatedly observed Plaintiff's motor strength only decreased to 4/5 on the right upper and lower extremities, but had full strength on the left side, normal muscle tone, and intact sensory examinations. (Tr. 20, 21, 25). Along with these findings, the ALJ noted that Dr. Tokorcheck observed an antalgic gait with

postural deformity, a neck with a severely limited and painful range of motion, spasms in the paraspinal area, and positive straight leg raise testing on the right. (Tr. 25, 27). The August 5, 2019 follow-up examination yielded the same findings. (Tr. 25).

The ALJ then considered Dr. Tokorcheck's August 21, 2019 Medical Source Statement:

> On August 21, 2019, Dr. Tokorcheck affirmed the claimant has no right "heal (sic)" in foot and was non-mobile in the neck. It was also affirmed that depression and anxiety affect the claimant's pain, and Dr. Tokorcheck determined the claimant has marked limitations to deal with stress. It was opined the claimant must alternate positions every thirty minutes, the claimant can sit at most for four hours, and stand or walk for two hours maximum. Dr. Tokorcheck also opined many restrictions, including the claimant can lift ten pounds at most frequently and twenty pounds occasionally with occasional postural activities. It was also noted the claimant could frequently use the left hand for all activities, while the right hand could only occasionally reach or handle. A cane was determined to be medically necessary and the claimant would be absent for more than three days at work (Exhibit 12F). Dr. Tokorcheck repeatedly observed the neck had a limited range of motion. The musculoskeletal system repeatedly demonstrated an antalgic gait with postural deformity, and Straight Leg Raise was positive on the right side. However, it was also repeatedly noted the musculoskeletal system demonstrated a normal tone, and motor strength was reduced only to 4/5 in the right upper and lower extremities, but the left was always full. Furthermore, it was frequently observed cranial nerves and sensory examination was intact, and the extremities never demonstrated clubbing, cyanosis or edema (Exhibit 13F).

(Tr. 25).

- 11 -

After considering the medical evidence as a whole, the ALJ found Dr. Tokorcheck's opinion that Plaintiff was limited to essentially less than sedentary levels of work to be extreme, inconsistent with, and not supported by the "respective studies." (Tr. 29). The ALJ reasoned:

> While true that Dr. Tokorcheck repeatedly observed the neck had a limited and painful range of motion, and the musculoskeletal system repeatedly demonstrated an antalgic gait, spasm in the paraspinal area, and Straight Leg Raise was positive on the right side. It was also repeatedly noted the musculoskeletal system demonstrated a normal tone without atrophy, motor strength was reduced only to 4/5 in the right extremities and the left was always full at 5/5. In addition, it was frequently observed cranial nerves and sensory examination was intact (Exhibit 13F). Limitations are demonstrated, but the extreme levels determined by Dr. Tokorcheck appear disproportionate. Further, the June 1, 2019 CT scan of the entire spine demonstrated grade 1 anterolisthesis but no acute compression fractures in the cervical, thoracic or lumbar spine (Exhibit 10F). In fact, treating neurosurgeon Dr. Tuli never observed such extreme limitations in the respective studies either (Exhibits 1F-3F, 5F).

(Tr. 29). The ALJ also found that Dr. Tokorcheck's opinion that anxiety and depression affect Plaintiff's pain to be inconsistent with the normal examination findings in the record where Plaintiff was often observed to have an unremarkable mood and affect. (Tr. 29). And the ALJ noted that Dr. Tokorcheck's specialty is pain management and not mental health, making these opinions further questionable. (Tr. 29). As a result, the ALJ found that "[b]ased on the inconsistencies and disproportionate limitations assessed, Dr. Tokorcheck's overall opinions are unpersuasive." (Tr. 29).

While Plaintiff may disagree with the ALJ in finding Dr. Tokorcheck's opinion unpersuasive, the ALJ supported her decision by discussing both the supportability and consistency of this opinion. In support of her findings, the ALJ noted that Dr. Tokorcheck's Medical Source Statement included extreme limitations for Plaintiff, amounting to essentially less than a sedentary level. (Tr. 25, 29). Though Plaintiff had some limitations as to range of motion, antalgic gait, and positive straight leg raises on the right, the ALJ also found only a slight decrease to 4/5 motor strength on the right and full strength on the left, normal tone throughout the musculoskeletal system, no atrophy, cranial nerves, and sensory examinations were intact, and the extremities never demonstrated clubbing, cyanosis, or edema. (Tr. 25, 27, 29). And the ALJ found Dr. Tokorcheck's opinion about anxiety and depression not supported by the generally normal psychological observations throughout the record, including those of Dr. Tokorcheck. (Tr. 29, 532, 537). In sum, the ALJ articulated reasons why she found Dr. Tokorcheck's opinion unsupported.

The ALJ also discussed the consistency of Dr. Tokorcheck's opinion with other evidence of record. The ALJ noted that records from Orlando Health showed normal examinations, including the musculoskeletal and neurological systems with all four limbs exhibiting 5/5 motor strength and a full range of motion observed. (Tr. 27). The ALJ also noted that at a February 2019 examination, consultative examiner Samer R. Choksi, M.D./ M.P.H., observed tenderness in the lumbar spine and

decreased sensation in the right wrist and hand, and reduced strength at 3/5 in the right hand. (Tr. 28). The ALJ further noted that the rest of the body exhibited a full 5/5 muscle strength with full range of motion, and Plaintiff could sit and rise from a chair and transfer to and from an examination table without assistance or difficulty. (Tr. 28). In addition, the ALJ found Dr. Tokorcheck's opinion not supported by a June 1, 2019 CT scan of the entire spine that demonstrated grade 1 anterolisthesis but no compression fractures in the cervical, thoracic or lumbar spine. (Tr. 29). Thus, the ALJ articulated specific reasons why she found Dr. Tokorcheck's opinion to be inconsistent with other medical records in evidence.

The ALJ complied with the regulations and articulated clear and specific reasons why she did not find Dr. Tokorcheck's opinion supported by and consistent with the medical evidence of record. Moreover, Plaintiff must do more than point to evidence in the record that supports his allegations. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). He must show the absence of substantial evidence supporting the ALJ's conclusion. *Id.* In addition, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021).

Here, substantial evidence supports that ALJ's decision to find Dr. Tokorcheck's opinion unpersuasive and the ALJ did not err in her analysis of this opinion.

### 3.   Physical Therapist's Opinions

Plaintiff argues the ALJ's treatment of the physical therapists' opinion is improper in two ways: first, the ALJ mischaracterizes the findings of the functional capacity evaluation ("FCE"); and second, even though the ALJ found the opinion persuasive, she did "not give it any weight in her RFC." (Doc. 20, p. 20). The Commissioner contends that while the ALJ found the physical therapists' opinions persuasive, the new regulations do not require her to adopt every part of an opinion that she finds persuasive as a limitation in the RFC. (Doc. 23, p. 12 n.4).

Plaintiff argues that the ALJ mischaracterized the FCE by saying that it found that Plaintiff could perform work at a sedentary level. (Doc. 20, p. 20). Plaintiff claims the FCE actually showed that Plaintiff could perform "a very limited number and type of sedentary work." (Doc. 20, p. 20-21). Plaintiff also claims that the physical therapists determined that Plaintiff may be able to work in some capacity at the sedentary level, but would need a job that allows shifting of positions at will from sitting, standing, or walking, and would need a limitation allowing unscheduled breaks during the workday. (Doc. 20, p. 21). In the decision, the ALJ found physical therapists Janice Barnette, PTA and Brenda Koronka, PT's opinions that Plaintiff could perform work at a sedentary level to be persuasive. (Tr. 29). Even if the ALJ

mischaracterized their opinions, any error is harmless because the ALJ limited Plaintiff to light work, not sedentary, and explained why she did not adopt the limitations found by the physical therapists as explained below. (Tr. 29-30).

Plaintiff further argues that the ALJ erred in finding the physical therapists' opinions persuasive, but not adopting limitations they found in the RFC. (Doc. 20, p. 21-22). Although the ALJ found these opinions persuasive, she was not required to adopt the limitations found in the opinion. *See* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."); *see also Freyhagen v. Comm'r of Soc. Sec.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019) ("However, the ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ."). In the decision, the ALJ explained why she found the physical therapists' opinions persuasive, but did not adopt all the limitations in the FCE.

> The opinions from physical therapists Janice Barnette, OTA and Brenda Koronka, PT, where the claimant could perform at sedentary levels was persuasive (Exhibit 11F). The examination noted the range of motion of the cervical spine was reduced with motor strength decreased to 3-/5. Further, the June 1, 2019 CT scan of the entire spine demonstrated instrument in the posterior instrumented of the cervical thoracic spine from C2-72 transfixing chronic fracture deformity of the right C5-C6 articulating facets; grade 1 anterolisthesis of C5 on C6 is favored to be chronic in nature; and no acute compression fractures in the cervical, thoracic or

> lumbar spine (Exhibit 10F). Although the overall examinations
> show less restrictions are appropriate, in particular Dr.
> Tokorcheck's repeated observations of motor strength was
> reduced only to 4/5 in the right upper and lower extremities
> (See Exhibit 13F), the opinions are persuasive.

(Tr. 29-30). In essence, the ALJ found the physical therapists' opinions persuasive,

but found the overall examinations show less restrictions are appropriate and so the

ALJ did not adopt these restrictions in the RFC. Thus, the ALJ explained and

provided good reasons in deciding not to adopt the physical therapists' limitations

in the RFC. When considering the record as a whole, substantial evidence supports

the ALJ's analysis of the physical therapists' opinion and the RFC determination.

### B.    Subjective Complaints

Plaintiff argues that the ALJ did not properly consider his subjective

complaints of disabling symptoms and limitations in assessing the RFC. (Doc. 23,

p. 17). Plaintiff claims that the ALJ improperly used boilerplate language to discount

his subjective complaints. (Doc. 20, p. 22). Plaintiff also claims that any supposed

inconsistencies the ALJ found do not rise to substantial evidence to reject Plaintiff's

allegations of pain. (Doc. 20, p. 22). Plaintiff challenges three supposed

inconsistencies: first, the ALJ commenting that Plaintiff does not take prescription

medication[3] for his pain; second, the ALJ noting that Plaintiff had income in the

---

[3] Plaintiff mentions that the ALJ found Plaintiff was not seeing a neurologist for his pain to
discount his subjective symptoms. (Doc. 20, p. 23). Plaintiff does not assert any further argument
or cite authority on this issue and it is therefore waived. . *See Outlaw v. Barnhart*, 197 F. App'x
825, 828 n.3 (11th Cir. 2006) (holding claimant waived issue because he did not elaborate on claim

fourth quarter of 2018 and in 2019, after the alleged onset date; and third, the ALJ noting that Plaintiff put forth poor effort at the second consultative examination before Dr. Choksi. (Doc. 20, p. 23-25).

A claimant may establish that he is disabled through his own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) treatment other than medication for relief of pain or other symptoms; (6) any measures a claimant uses to relieve pain or other symptoms; and (7) other factors concerning a claimant's functional limitations and restrictions due

---

or provide citation to authority regarding claim).

to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019).

The ALJ should consider these factors along with all of the evidence of record. *Ross*, 794 F. App'x 867. If the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

In the decision, the ALJ made these general findings on Plaintiff's subjective complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 23).

*Prescription Medication*

One reason the ALJ found Plaintiff's subject complaints unsupported was Plaintiff did not take prescribed medication except medical marijuana. (Tr. 27). The ALJ noted that Plaintiff affirmed to Dr. Choksi that he was not taking any medications for his ailments, including back pain. (Tr. 27). Plaintiff testified that he was taking over-the-counter drugs and again affirmed that he was not taking any prescription medications, except medical marijuana. (Tr. 28, 56). The ALJ commented that failure to follow a prescribed course of remedial treatment is good reason for denying an application for benefits. (Tr. 28).

In evaluating a plaintiff's symptoms and their functional effect, "the ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012). An ALJ must consider evidence showing a plaintiff cannot afford medical care before denying benefits based on non-compliance with care. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). When an ALJ relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of disability benefits," and the record contains evidence that a plaintiff could not afford the prescribed medical treatment, then the ALJ must determine whether a plaintiff could afford the

prescribed medical treatment. *Ellison*, 355 F.3d at 1275. If a court determines the failure to follow prescribed medical treatment is not one of the "principal factors in the ALJ's decision," then the ALJ need not delve into a plaintiff's ability to pay, and this failure is not reversible error. *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011).

Plaintiff argues that he had no insurance and could not afford the prescription medications. (Doc. 20, p. 23). Even if true, this was not the sole reason the ALJ found to deny benefits. Plus, Plaintiff does not explain how he could afford medical marijuana but not other prescribed medications. And at the hearing, Plaintiff testified he stopped taking the prescribed medications because of his reaction to them and his lack of tolerance for narcotics, not because of his lack of funds. (Tr. 56). Substantial evidence supports the ALJ's statements on Plaintiff's failure to take prescription medications.

*Earnings*

Plaintiff claims that the ALJ improperly considered alleged earnings during the period at issue. (Doc. 20, p. 23). In the decision, the ALJ noted that Plaintiff worked in 2018 and 2019 as an auto detailer, which was after the alleged onset or application date. (Tr. 19-20, 28). Plaintiff completed a Work Background report that showed he worked from July 2018 through October 2019 detailing cars. (Tr. 271). Plaintiff claims that he had no earnings after October 2018, not October 2019, and

he made a mistake on this form. (Doc. 20, p. 24). Even if true, the ALJ mentioned the earnings as one of many reasons why he found Plaintiff's subjective complaints inconsistent with the limiting effects of Plaintiff's symptoms. As a result, even if the ALJ erred in this finding, which the Court finds she did not, the error was harmless because the ALJ provided sufficient other reasons to support her findings as to subjective complaints.

*Poor Effort at Consultative Examination*

Lastly, Plaintiff claims that the ALJ improperly used Dr. Choksi's statement that he gave poor effort at his examination to discount Plaintiff's subjective complaints of pain. (Doc. 20, p. 24). Plaintiff argues that Dr. Choksi included no such language in his second evaluation. (Doc. 20, p. 24-25).

In the decision, the ALJ noted that after an April 15, 2019 second consultative examination, Dr. Choksi affirmed that during this examination, Plaintiff "gave poor effort" and suggested that Plaintiff magnified his symptoms. (Tr. 29). On May 15, 2019, Debra Troiano, M.D. contacted Dr. Choski to inquire about the worsening results between the first consultative examination in January 2019 and the second one in April 2019. (Tr. 234). Dr. Choski "stated claimant gave poor effort and some suggestion in 4/2019 of symptom magnification." (Tr. 234). Although Plaintiff may disagree with this statement, the record evidence supports the ALJ's inclusion of this comment in the decision.

*Daily Activities*

The ALJ also considered Plaintiff's daily activities. (Tr. 28). For example, Plaintiff took a taxi to a consultative examination because his license was suspended and not because he could not drive. (Tr. 28). Plaintiff reported he needed moderate assistance with dressing, and minimal assistance with showering, grooming, housekeeping, and meal preparation. (Tr. 28). Plaintiff reported he was independent with handling money management, shopping, and transferring, but needed assistance with laundering. (Tr. 28). The ALJ concluded that from these activities, Plaintiff's symptoms were not as disabling as alleged and Plaintiff had some capacity for work. (Tr. 28).

In short, the ALJ considered the consistency of Plaintiff's subjective statements about pain with all of the medical and other evidence of record to determine that his statements about the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the record evidence. After considering the record as a whole, the ALJ clearly articulated explicit reasons for her findings and assessed an RFC consistent with these findings. For these reasons, substantial evidence supports the ALJ's decision related to Plaintiff's subjective complaints.

## III.    Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on May 4, 2022.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties